UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JARON JAY JACKSON,**

**Petitioner,**

**v.**

**Civil Case No. 26-C-1174**
**Crim. Case No. 22-CR-0055**

**UNITED STATES OF AMERICA,**

**Respondent.**

---

## SCREENING ORDER

---

Jaron Jay Jackson pled guilty to Sex Trafficking of a Minor and Transportation of Child Pornography in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 2252A(a)(1). He was sentenced to a term of imprisonment of 240 months. His conviction was affirmed on direct appeal. *United States v. Jackson*, 132 F.4th 1019 (7th Cir. 2025). On July 2, 2026, Jackson filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Dkt. No. 1.[1]

The Court denied Jackson's § 2255 motion for failure to state a cognizable claim but gave him an opportunity to amend his motion if he could do so in good faith and cure the defects noted in the Court's order. Dkt. No. 3. Rather than file an amended motion, Jackson filed a supplement of over fifty handwritten pages, citing an abundance of case law but failing to state his claims with clarity and precision. The Court ordered Jackson to file a concise, amended § 2255 motion in the proper form. Dkt. No. 5. Instead, Jackson requested leave to file an oversized brief, which the Court denied. Dkt. No. 7. This matter now comes before the Court on Jackson's motion to supplement his § 2255 motion and his second motion for leave to file an oversized brief. Dkt. Nos. 8 & 9.

[1] Dkt. No. is used to refer to entries in Jackson's civil action seeking relief under 28 U.S.C. § 2255. CR Dkt. No. will refer to docket entries in Jackson's criminal case, 22-CR-0055.

In filing both of his motions, Jackson ignored this Court's instruction to file a concise § 2255 motion in the proper form. Though he was informed that he only needed to allege the facts supporting his claims and did not need to cite law or cases, *see* Dkt. No. 7, Jackson's second motion to file an oversized brief notes that he "made a table of contents, numbered each paragraph, and did a table of case law separate." Dkt. No. 8. He also states that his case is complex. *Id.* For these reasons, Jackson again filed nearly 60 handwritten pages alleging a variety of mistakes committed by his trial and appellate counsel.

Jackson's repeated failure to comply with the Court's instructions alone warrants denial of his § 2255 motion and dismissal of the case. Given the length of his sentence, however, the Court declines to dismiss his case on procedural grounds. Instead, the Court will proceed to address Jackson's claims on their merits, to the extent those claims are discernable from the papers he has submitted.

**BACKGROUND[2]**

On March 1, 2022, a grand jury sitting in Milwaukee returned a nine-count indictment charging Jaron Jay Jackson with sex trafficking of two fifteen-year-old females (JV-1 and JV-2) and an adult female (AV-1); and producing, transporting, and possessing child pornography depicting JV-1 performing oral sex on Jackson. On August 2, 2023, Jackson pled guilty to three of those counts: two counts of Sex Trafficking of a Minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and one count of Transportation of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(1). The Court imposed an under-Guideline sentence of 240 months.

The crimes alleged in the indictment all occurred prior to June 30, 2019, the date on which Milwaukee police officers arrested Jackson on a warrant issued by the Wisconsin Department of

[2] The background facts are taken largely from the Presentence Investigation (PSI) Report, CR Dkt. No. 51, which the Court adopted as its findings of fact at Jackson's sentencing without objection from the defense, and from the addendum to his plea agreement, CR Dkt. No. 46-1, to which he stipulated as a factual basis for his guilty plea.

Corrections (DOC) for absconding from the extended supervision that followed his state prison sentence imposed on a prior felony conviction for possession of cocaine with intent to distribute. Prior to his arrest for absconding from supervision, the Oshkosh Police Department (OPD) and the Wisconsin Division of Criminal Investigation (DCI) were jointly investigating Jackson for one or more of the sex trafficking crimes ultimately charged in the indictment. When Jackson was arrested, his iPhone 6 and other personal property were taken from him by police.

On July 29, 2019, DCI retrieved Jackson's phone from the Milwaukee Police Department, where it had been logged into evidence following his arrest. On August 9, OPD Detective Robertson successfully applied for a warrant to search Jackson's phone. The warrant was then emailed to DCI's forensic examiner, who started the extraction process on August 12, 2019. The phone's unknown password and encryption initially prevented a full download. The examiner began what is called a "brute force" decryption using forensic software which ran continuously until May 17, 2021, resulting in a complete file system extraction. The evidence from Jackson's phone included hundreds of sex trafficking messages between Jackson and JV-1, JV-2, and AV-1; numerous messages, images, and videos related to online advertisements that Jackson posted to sex traffic the three females; billing and contact information for Jackson and the hotels that he used for sex trafficking; and child pornography videos taken by Jackson showing JV-1 performing oral sex on him. This and other evidence formed the basis for the criminal charges against Jackson.

During the criminal proceedings, attorney Thomas Phillip was appointed as Jackson's federal public defender. CR Dkt. No. 6. Jackson and Attorney Phillip later had a breakdown in communication which necessitated the appointment of new counsel. CR Dkt. No. 23. The Court then appointed Attorney Jeffrey Jensen to serve as Jackson's counsel. CR Dkt. No. 25.

On May 5, 2023, through his new counsel, Jackson filed a motion to suppress the evidence seized from his phone on the ground that law enforcement unreasonably delayed seeking a warrant

to effectuate its search. CR Dkt. No. 32. Citing *United States v Burgard*, 675 F.3d 1029 (7th Cir. 2012), Jackson argued that the police waited too long before obtaining the warrant authorizing the search of his phone. The delay in seeking the warrant after seizure of his phone was forty days. In *Burgard*, the Seventh Circuit upheld a search that was conducted six days after the seizure of the phone. In so ruling, however, the court noted that "when officers failed to seek a search warrant, at some point the delay becomes unreasonable and is actionable under the Fourth Amendment." *Id.* at 1032. Given the substantially longer period of delay between the seizure of his phone and the application for the warrant in this case, Jackson argued that, under *Burgard*, the search was illegal and the evidence obtained therefrom should be suppressed. The Court ultimately denied Jackson's motion, both because it was untimely and because it failed on the merits. CR Dkt. No. 43. It was that ruling that Jackson unsuccessfully challenged in his direct appeal. *Jackson*, 132 F.4th at 1020.

Jackson now comes before the Court on a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. Many of his claims revolve around the same suppression issues previously ruled on in the course of the criminal proceedings in this Court and on appeal.

**ANALYSIS**

Pursuant to Rule 4 of the Rules Governing § 2255 Proceedings, I must give the case prompt initial examination:

> If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4, Rules Governing § 2255 Proceedings.

During my initial review of habeas petitions, I look to see whether the petitioner has set forth cognizable claims under § 2255. Here, Jackson asserts 10 grounds for the relief he seeks, all of which argue that he received ineffective assistance of counsel. Ineffective assistance of counsel, if properly established, may provide a constitutional ground for relief under *Strickland v. Washington,* 466 U.S. 668 (1984). Such an "ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003). Under *Strickland,* a counsel's performance must be both deficient and prejudicial. 466 U.S. at 687. To be "deficient" an attorney must have made "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To be "prejudicial" the counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* With these principles in mind, the Court will address each ground Jackson raises in turn.

First, Jackson claims Attorney Phillip inadequately investigated possible evidence suppression issues which caused pre-trial motion deadlines to be missed. Dkt. No. 9-1 at 4. This claim fails because, even though the pre-trial motion deadline was missed and the suppression motion was untimely, both the district court and the court of appeals addressed and denied Jackson's suppression motion on the merits. CR Dkt. Nos. 43 & 68-1. Thus, Jackson suffered no harm from Attorney Phillip's failure to investigate possible suppression issues. "This is particularly so in light of the fact that [Jackson's] motion for a new attorney was granted and his plea and sentencing occurred after a new attorney was appointed. The petition offers no reason to believe that anything his first attorney did contributed to the ultimate result in the case." *Wickersham v. Warden, FCI Oxford*, No. 21-C-556, 2021 WL 2003034, at *1 (E.D. Wis. May 19, 2021).

Jackson's second ground for relief claims that Attorney Jensen failed to adequately investigate and/or challenge the initial warrantless seizure of his phone at the time of his arrest. Dkt. No. 9-1 at 28. This claim fails on its face. There is no dispute that Jackson was lawfully arrested for absconding from supervision. Seizure of his phone was a lawful incident to his arrest. *United States v. Robinson*, 414 U.S. 218, 224 (1973). There was nothing for Attorney Jensen to investigate and no lawful basis to challenge the seizure of Jackson's phone.

Jackson's third asserted ground for relief is that Attorney Jensen "failed to thoroughly investigate actual duration of the warrantless seizure." Dkt. No. 9-1 at 34. This is simply a rehash of the claim that the delay in searching his phone rendered the search unlawful, which the Court rejected on its merits. CR Dkt. No. 43. The claim was raised on Jackson's direct appeal and rejected. The doctrine of the law of the case bars prisoners from relitigating in collateral proceedings an issue that was decided on his direct appeal. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004). Here, the duration of the seizure of Jackson's cellphone was considered on the merits both by the district court and court of appeals during the original criminal proceedings against Jackson. The Court declines to revisit that issue, especially in light of the fact that the Court addressed the question on the merits "to fend off any collateral attack." CR Dkt. No. 68-1 at 2.

Jackson's fourth ground for relief claims that his attorneys erred in failing to investigate and seek a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), which permits a defendant to challenge a search warrant by arguing that the police included false or recklessly misleading statements in the warrant affidavit. Dkt. No. 9-1 at 38. Jackson claims several statements in the warrant affidavit, CR Dkt. No. 36-1, meet this standard. First, he claims the statement "Jackson used his phone to contact JV-1 about sex trafficking" was false. Dkt. No. 9-1 at 38. This argument is plainly contradicted by the facts Jackson stipulated to in his plea agreement. CR Dkt. No. 46 at

3. Those facts stated that "JV-1's phone contained numerous messages with Jackson—who she saved in her contacts as 'Hoe' with his known phone number—about their sex-trafficking activities." CR Dkt. No. 46-1 at 2. Jackson also claims that the statement, "Jackson used his phone to contact JV-2 about sex trafficking," is false. Dkt. No. 9-1 at 38. But again, the facts included in his plea agreement indicate that JV-1's phone included messages with JV-2 regarding Jackson and how JV-2 should respond to Jackson's messages regarding sex trafficking. CR Dkt. No. 46-1 at 2–3. Jackson also claims that the statement "JV-2 stated Jackson had an iPhone" was false. Dkt. No. 9-1 at 39. But Jackson also admits that JV-2 said he used a phone. *Id.* This minor detail is not enough to claim that the police included false or recklessly misleading statements in the warrant affidavit. In other words, many of the statements Jackson claims were false or recklessly misleading were true and supported by the evidence. At the time the search warrant was obtained, police had acquired the information Jackson challenges from interviews with JV-1 and JV-2. Thus, Jackson's attorneys were not constitutionally deficient by failing to request a hearing on the alleged *Franks* issue.

Jackson also complains that the statements "Jackson used his phone to post sexual advertisements," "JV-2 states she went on 2 or 3 dates for about $200 each and gave the money to JV-1 who gave it to Jackson," "JV-2 states she knew she was going to Chicago to have sex for men with money," and "JV-2 states that Jay used his phone to take pictures" are false. *Id.* at 38–40. But throughout his complaints, he notes that these statements came from interviews police had with JV-2. *Id.* Even assuming JV-2 was lying to the police, "the fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth." *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994) (internal quotation marks and citations omitted). Because JV-2's statements were

corroborated by JV-1 and the police were aware of JV-2's basis for making such statements, a *Franks* argument would have had no chance of success based on this record. *See Kibler v. United States*, No. 03-CV-4154-JPG, 2006 WL 1891859, at *5–6 (S.D. Ill. July 10, 2006). Therefore, Jackson's fourth asserted ground for relief also has no merit.

In his fifth asserted ground for relief, Jackson claims Attorney Jensen erred in conceding probable cause during the suppression briefing and hearing. Dkt. No. 9-1 at 42. This claim has no merit. Based on the interviews with JV-1 and JV-2, and the follow-up investigation recited in the warrant affidavit, police clearly had probable cause to search Jackson's cell phone. CR Dkt. No. 36-1. Any challenge to the probable cause finding would have been futile. Jackson's ineffective assistance claim on this ground accordingly fails.

Jackson's sixth ground for relief states that Attorney Jensen included a line in his brief admitting that JV-2 said Jackson used his phone to post sexual advertisements and take pictures of her. Dkt. No. 9-1 at 47. Presumably, Jackson is referring to Attorney Jensen's motion to suppress the evidence obtained from the search of Jackson's phone on the ground that police unreasonably delayed seeking a warrant. In recounting the factual allegations, Attorney Jensen noted that during a July 1, 2019 interview, JV-2 "said that Jackson was using his cellular telephone to take pictures of her, and for placing prostitution ads on the internet." CR Dkt. No. 32 at 3. Whether Jackson used his phone to take pictures of JV-2 and personally posted them on the internet or directed JV-1 to do so, as the warrant affidavit states, CR Dkt. No. 36-1 at 7–8, is not material. Jackson fails to explain how this line in Attorney Jensen's motion prejudiced him or impacted the ultimate disposition of his suppression motion. Without a showing of prejudice, Jackson's sixth ground for his ineffective assistance of counsel claim must fail.

Jackson's seventh ground for relief, like his third, challenges Attorney Jensen's failure to challenge the basis for the seizure of his phone at the time of his arrest. As already explained,

however, any challenge to the seizure of his phone would have been futile. Jackson was lawfully arrested for absconding from supervision and the seizure of his phone incident to his lawful arrest was therefore also lawful. Based on the fact that Jackson remained in custody and police had probable cause to believe the phone contained evidence of crimes, retention of Jackson's phone was likewise lawful.

In his eighth ground for relief, Jackson argues that Attorney Jensen, as his appellate counsel, failed to present a stronger argument that there was only reasonable suspicion for his warrantless seizure. "Because appellate counsel is not required to raise every non-frivolous issue on appeal, appellate counsel's performance is deficient under *Strickland* only if []he fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel v. Butler*, 782 F.3d 882, 898 (7th Cir. 2015). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Id.* (quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)).

Jackson was arrested on a warrant issued by the Wisconsin DOC after he absconded from supervision in October 2017. *See* Presentence Investigation Report (PSI), CR Dkt. No. 51 ¶ 20. Further, investigators successfully obtained a warrant to search Jackson's phone on August 9, 2019. It therefore would have been frivolous for Jackson's appellate counsel to argue that there was only reasonable suspicion for his arrest and/or seizure of his phone. Failing to raise frivolous issues on appeal does not amount to ineffective assistance of counsel.

Jackson's ninth ground claims that both Attorney Jensen and Attorney Phillip failed to investigate the metadata of a video found in JV-1's phone. Dkt. No. 9-1 at 56. He claims that the metadata of the video, specifically its date and location, do not align with the government's use of the video. *Id.* He also claims that the woman in the video is not JV-1. *Id.* He states that the

metadata would show that officers were purposefully lying to the court and that the government was using false evidence against him. *Id.* at 57.

Here, it was not unreasonable for Jackson's attorneys not to challenge or question the metadata of the June 2, 2019 video. JV-1 admitted to investigators both that she was the female in the video and that the video was recorded in Chicago. PSI, CR Dkt. No. 51 ¶ 41. Additionally, JV-1 admitted that the male in the video was Mr. Jackson, even though she was unknowingly calling him by the wrong name. *Id.* at ¶ 43. Investigators also determined that Jackson's "distinctive scar and moles clearly matched those of the male performing oral sex on JV-1 in the June 2, 2019 video." *Id.* at ¶ 44. Thus, it was not unreasonable for Jackson's attorneys not to investigate the metadata of the June 2, 2019 video, given the volume of evidence contrary to Jackson's assertions. In addition, when Jackson entered his plea agreement he admitted that the June 2, 2019 video found on JV-1's phone depicted him [Jackson] performing oral sex on JV-1. CR Dkt. No. 46-1 at 2.

Finally, Jackson claims that Attorney Jensen failed to investigate JV-2's out-of-court identification. Dkt. No. 9-1 at 58. Jackson claims that JV-2's identification was unduly suggestive because the police only showed her one photo instead of a proper photo array. *Id.* He claims that, without this tainted identification, the Government's case would have been "severely weakened" and that he would have elected to go to trial. *Id.* at 59. As discussed above, to succeed on a claim of ineffective assistance of counsel, Jackson must show both that his counsel's performance was unreasonable and that he was prejudiced by counsel's alleged errors. But here, it was not unreasonable for Attorney Jensen not to challenge JV-2's identification. As the Court noted in its previous screening order:

> In determining whether an unduly suggestive identification is nevertheless reliable, the court looks to the following factors: "(1) the opportunity of the witness to observe the criminal at the time of the crime (or prior to the identification); (2) the

> witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the time of the identification; and (5) the length of time between the crime and the identification." *Lee v. Foster*, 750 F.3d 687, 692 (7th Cir. 2014) (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)). Here, identity was not in dispute since JV-2's previous contact with Jackson was substantial. Jackson had trafficked JV-2 for sex between May 19, 2019, when she arrived in Chicago, and May 24, 2019, when her father picked her up near the airport. Presentence Investigation Report (PSI), Dkt. No. 51 ¶ 30. Between 150 and 300 total digital images of both JV-1 and JV-2 engaging in sexually explicit conduct were found on Jackson's phone. *Id.* ¶ 22. Jackson recruited JV-2 using text messages and she stayed with him in Chicago hotels. *Id.* ¶ 30. In showing her a photo of Jackson, it appears law enforcement was simply confirming her identification of him. In any event, given her prior history with him and the nature and quantity of other evidence against him, it was not unreasonable for counsel not to challenge JV-2's identification of Jackson as the person who sex trafficked her.

Dkt. No. 3 at 4. In his amended motion, Jackson includes no additional facts that would change this analysis. Thus, it was not unreasonable for Attorney Jensen not to challenge JV-2's out-of-court identification.

In sum, Jackson's motion fails to state a claim cognizable under § 2255. Because Jackson has been given several chances to amend his motion and has failed to cure its defects, the Court will deny his motions and dismiss the case.

## CONCLUSION

The record in this case conclusively shows that Jackson is not entitled to relief under § 2255 on any of the claims he has asserted. Jackson's second motion to file an oversized brief (Dkt. No. 8) is **DENIED**. His motions to vacate, set aside, or correct his sentence under § 2255 (Dkt. Nos. 1, 4 & 9) are also **DENIED** and the case is **DISMISSED**. The clerk is directed to enter judgment accordingly.

A certificate of appealability will be denied. I do not believe that reasonable jurists would believe that Jackson has made a substantial showing of the denial of a constitutional right. Jackson is advised that the judgment entered by the clerk is final. A dissatisfied party may appeal this

Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 60 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Jackson decides to appeal, he should also request that the Court of Appeals issue a certificate of appealability. Fed. R. App. P. 22(b).

Dated this 17th day of November, 2026.

William C. Griesbach
United States District Judge